**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-10366
Summary Calender

_____


NADINE MALLERY,

                              Plaintiff-Appellant,

               VERSUS

               CITY OF DALLAS,

                              Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Texas
(3:95-CV-1919-H)
_____
June 11, 1998


Before JONES, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


     Nadine Mallery appeals a summary judgment for the City of
Dallas on employment discrimination claims brought under the
Americans with Disabilities Act ("ADA") and related retaliation
claims.  Finding no error, we affirm.

---

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

Mallery began work for the Dallas City Auditor's Office in July 1992 as an Auditor class 11. About two months later, she sought counseling for chronic depression. One day she missed several hours of work because of counseling and informed the Audit Manager, Jon Coffee, of her therapy in order to explain the lost time.

In March 1993, Mallery was promoted to Auditor class 13. Shortly thereafter, she was forced to miss a day of work because of sealant fumes emanating from a newly refinished office door. Instead of taking vacation or sick time, Coffee recommended filing a workers' compensation claim, which she did.

In May 1993, Mallery's boss, Daniel Paul, the City Auditor, notified Mallery that she had not been successful in her six-month probationary period as Auditor class 13. He cited performance and deportment problems since advancing to her new post. As a result, he demoted her to her original position of Auditor class 11. Simultaneously, however, Paul promoted Mallery to Auditor class 12, thus beginning a six-month probationary period in that position.[1]

In July 1993, Paul informed Mallery of several problems with her performance since her promotion to Auditor class 12, including

---

[1] The City of Dallas Personnel Rules provide that a city employee is "probationary" for the first six months of employment. During that time, he has no property interest in his job. If his superiors determine that his performance is not satisfactory, they may terminate him (if it is his first position with the city), or demote him to his last non-probationary position.

being late to work sixteen times in less than two months; using office equipment for personal use; and having bad working relationships with her supervisors. The next day, Mallery filed a complaint with the EEOC in which she alleged that her demotion was the result of sex discrimination in violation of title VII.[2]

In September 1993, the Assistant City Auditor, Rob Darby, sent a letter to Paul concerning Mallery's use of her sick leave without a documented medical excuse. Thereafter, Paul terminated Mallery's probationary status as Auditor class 12 and demoted her to her original position as Auditor class 11. Paul cited performance and attendance problems for the demotion. In response, Mallery filed another EEOC complaint, this time alleging retaliation for her previous complaint in violation of title VII and alleging discrimination because of her chronic depression.

Again, Mallery's supervisors requested medical documentation for her extensive use of sick time, as required by the Dallas City Personnel Rules. In reaction to the request, Mallery yelled at her supervisor and refused to provide the documentation. A few days later, Mallery was suspended with pay pending a review of her conduct for possible violations of the Dallas City Personnel Rules for unacceptable conduct in the office.

During that time, Mallery requested a transfer to a "more

---

[2] In the litigation that ensued, the district court granted summary judgment to the City on Mallery's sex discrimination suit; she does not appeal that ruling.

understanding and nurturing environment" as a "reasonable accommodation" for her disability of chronic depression. The City's committee on accommodating persons with disabilities refused, concluding that her performance and interpersonal problems would likely follow her to any position within city government.

In April 1994, Mallery was ordered to return to work to face a hearing on the pending disciplinary charges. She refused to do so, and after four months of repeated requests and repeated refusals, Paul fired her, citing her refusal to return to work to face the disciplinary hearing; her refusal to provide medical documentation for her extended use of sick time; and her disorderly conduct when requested to provide medical documentation for her use of sick leave.

Again, Mallery filed an EEOC complaint alleging retaliation for her previous EEOC complaints. In May 1995, the EEOC issued determination letters concluding that there were no violations of title VII or the ADA, and advised Mallery of her right to sue.

## II.

We review a summary judgment *de novo*. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

4

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The movant bears the burden of demonstrating that there is an absence of evidence to support the respondent's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-movant then must set forth specific facts showing there is a genuine issue for trial. *See Hanks*, 953 F.2d at 997.

We begin by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). If there are fact issues, we review the evidence relating to them, viewing the facts and inferences in the light most favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Celotex*, 477 U.S. at 323; *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).


III.

A.

Mallery's "chronic depression" does not constitute a disability under the ADA. In order to understand a plaintiff's evidentiary burden better, we first review the ADA's mandate: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in

5

regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Therefore, a plaintiff is obliged to make an initial showing that he has a "disability" in order to invoke the ADA's protections.[3]

The ADA defines a "disability" as follows:

The term "disability" means, with respect to an individualSS

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B)  a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

"*Major life activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i)

---

[3] A plaintiff can prove discrimination directly or indirectly.  Directly, he must show that he is disabled under the act; that with or without reasonable accommodation he could perform the job; and that the employer discharged him because of his disability.  *See* 42 U.S.C. § 12112(a); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 117 S. Ct. 586 (1996).

Alternately, he can use a burden-shifting analysis to make out a *prima facie* case of discrimination.  *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To do so, he must show that he is disabled under the act; that he is qualified with or without accommodation; that he was subject to an adverse employment action; and finally, that he was replaced with a non-disabled person.  *See id*; *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).  Both methods, however, require that the plaintiff make an initial showing that he is "disabled," as statutorily defined.

(1997).  This list is illustrative, rather than exclusive.  *See id.* § 1630 app.

Federal regulations interpret "substantially limit" as follows:

> (1) The term *substantially limits* means:
>
>> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>>
>> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
>
> (2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
>
>> (i) The nature and severity of the impairment;
>>
>> (ii) The duration or expected duration of the impairment; and
>>
>> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j).  What "substantially limits one or more major life activities" ultimately means is determined on a case-by-case basis.  *See Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992); *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986).

B.

Mallery alleges that she is disabled under §§ 12102(2)(A) and (C): that her depression substantially limits her major life activities of sleep, thinking, and concentration; and that the city regarded her as having a mental impairmentSSchronic depressionSSthat substantially limits one or more of her major life activities.

## 1.

Even if sleeping, thinking, and concentrating are properly "major life activities," Mallery has provided no more than general assertions that her chronic depression "substantially limits" these activities. She has offered nothing to support a jury's finding that the ailment is severe; of long duration; or has a permanent or long-term impact. Mallery's evidence is accordingly insufficient to withstand summary judgment on her claim of disability under § 12202(2)(A).

## 2.

Mallery also claims that she is disabled because her employer "regards her as" having a disability that substantially limits one or more of her major life activities.

> One is regarded as having a substantially limiting impairment if the individual (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.

8

*Burch v. Coca-Cola Co.*, 119 F.3d 305, 322 (5th Cir. 1997) (internal quotation and citation omitted), *cert. denied*, 118 S. Ct. 871 (1998). The key to any "regarded as" claim is some showing that the employer had a perception that the employee was not up to the job because of his real or imputed mental or physical impairment.

Mallery presents no evidence to raise a fact issue concerning whether her employer regarded her as having a disability. She asserts only that the employer knew about her disability, but can offer no evidence to support a connection between that knowledge and adverse employer perceptions. In fact, the record appears to support the opposite conclusionSSthat her employer regarded her as a capable auditor, twice granted her promotions, and finally terminated her because of her insubordination.[4]

IV.

Next, Mallery asserts that the City took adverse employment actions against her because she had filed claims with the EEOC. "To establish a Title VII retaliation claim, [Mallery] must prove: (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal

---

[4] Because Mallery has no disability under the ADA, her claims of discrimination under that act must fail. Accordingly, we need not consider whether she has made a *prima facie* case of discrimination; whether the City has a legitimate non-discriminatory excuse; or whether that excuse is pretextual. We also do not reach whether the City's refusal to transfer Mallery to a more "understanding" and "nurturing" work environment constituted a failure to make reasonable accommodation to the disabled.

connection existed between the participation in the protected activity and the adverse employment action." *Pierce v. Texas Dep't of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1151 (5th Cir. 1994) (citation omitted). "Once the prima facie case is established, the burden of producing some non-discriminatory reason falls upon the defendant. The employee then assumes the burden of showing that the reasons given were a pretext for retaliation." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992) (ADEA claim) (citation omitted).

Assuming Mallery has properly made a *prima facie* case, the City offers, as its non-discriminatory reason for her demotions and termination, her unacceptable conduct in the workplace, her insubordination, and her unsatisfactory performance. Mallery offers nothing to show that these reasons are a pretext for retaliation. As such, her claims cannot withstand judgment as a matter of law.

V.

Finally, Mallery brings a state law retaliation claim, in which she maintains that the City took adverse employment actions against her because she had filed a workers' compensation claim. Under Texas law, an employer "may not discharge or in any other manner discriminate against an employee because the employee has . . . filed a workers' compensation claim in good faith." Tex.

LABOR CODE ANN. § 451.001 (West 1996).

> An employee claiming discharge in violation of § 451.001 has the burden of at least demonstrating a causal link between the discharge and the filing of the claim for workers' compensation benefits.  While the employee can meet this burden without showing that he was fired solely because of the filing of the workers' compensation claim, he must show that the filing of the claim was at least a determining factor in the discharge.

*Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 589-90 (5th Cir. 1995) (per curiam) (citations omitted).

Mallery offers only her subjective belief that there is a causal connection between her filing of a workers' compensation claim and her demotions and eventual termination.  Under Texas law, that is not enough to support causation.  *See Hughes Tool Co. v. Richards*, 624 S.W.2d 598, 599 (Tex. App.§§Houston [14th Dist.] 1981, writ ref'd n.r.e.).[5]

AFFIRMED.

---

[5] Mallery also offers no evidence that the only employee with the power to demote or fire her, Paul, ever disapproved of her filing a workers' compensation claim.